# Hooper *v.* Whitaker.

### *Action on Promissory Note.*

1. *Promissory note; when inadmissable in evidence because not containing a revenue stamp.*—The fact that a promissory note sued on is not properly stamped as required by the act of Congress "to provide ways and means to meet war expenditures, and other purposes," is not sufficient to authorize the rejection of such a note as evidence unless it be shown that the omission to stamp it was with the intent to evade payment of revenue.

2. *Sale of chattel; when misrepresentation by vendor is fraud.* A misrepresentation of a material fact by the vendor of personal property made at the time of the sale, or pending the preliminary negotiations, on which the purchaser has a right to rely, and does in fact rely, as inducements to the contract, is a fraud; and is available as a defense to an action upon a promissory note given for the purchase money of the property so sold.

2. *Same; same.*—While in the sale of personal property a misrepresentation of a material fact by the vendor on which the purchaser relies as an inducement to the contract constitutes a fraud available as a defense to an action for the purchase money, still in such transaction the purchaser cannot refuse

[Hooper v. Whitaker.]

to consult his own knowledge of the condition of the subject matter of the sale and purchase; and, if, in the sale of a half interest in a mercantile business the purchaser, by reason of his familiarity with the condition of the business he is purchasing, knew the statements made by the vendor as inducements to the contract were false, or had reason to believe they were untrue, and no deception was practiced so as to mislead him from consulting his own kwowledge of its conditions, such purchaser cannot claim to be deceived, and the misrepresentations made as to the conditions of the business do not constitute such a fraud as will be available to him as a defense in an action to recover the purchase money.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. JAS. A. BILBRO.

This was an action brought by the appellee, S. C. Whitaker, against the appellant, A. R. Hooper, upon a promissory note for $1,000, given by the defendant to the plaintiff.

The substance of the pleas setting up the principal defenses upon which issue was joined is sufficiently set forth in the opinion.

On the trial of the case the defendant testified that the note sued on was his property; that it was executed by the defendant and was given as the purchase price for his, the plaintiff's, half interest in the partnership business existing between him and the defendant; that this note was executed on September 21, 1899, and was made payable on January 1, 1900; that at the time the note was executed and delivered to him it had on it only one two cent United States documentary revenue stamp, which had been cancelled by the defendant; that after its maturity plaintiff and his attorney, without the knowledge of the defendant, put 18 cents' worth of revenue stamps on said note, and cancelled them.

The plaintiff then offered to introduce said note in evidence. To the introduction of this note in evidence the defendant objected upon the ground that it was not stamped with the required revenue stamps, and because the stamps were affixed to said note by a person unauthorized thereto. The court overruled this objection,

allowed the note to be introduced in evidence, and to this ruling the defendant duly excepted.

It was shown by the evidence that on the 21st day of January, 1899, the plaintiff and the defendant entered into a partnership agreement for the purpose of conducting a retail liquor business; that under this agreement he engaged in said business; that while it was still pending, to-wit, on September 21, 1899, the plaintiff offered to sell to the defendant his half interest in said business and its entire assets for $1,000. The defendant testified that in negotiating the sale of his half interest the plaintiff stated to the defendant that the firm had a stock of goods amounting to $1,800; that there were accounts belonging and due the firm of $480, and that there was enough money in the bank belonging to the firm to pay all of the firm's debts.

The defendant further testified that the plaintiff had entire control and management of the business; that he, the defendant, was ignorant as to the truth or falsity of plaintiff's representations, but he believed them to be true, and, so believing, he agreed to purchase the plaintiff's half interest and executed the note sued on: but that after such purchase and execution of the note sued on, he, the defendant, invoiced the stock of goods and found that the said stock, together with the furniture and fixtures, amounted to only $729, and that upon investigation he found that there was only $250 of accounts due the firm; that indebtedness due by the firm was $841, and that there was only $370 of money in the bank belonging the said firm.

The other facts in the case relating to the representations and evidence of the plaintiff and defendant, respectively, pertaining thereto, is sufficiently set forth in the opinion.

The plaintiff testified that while the business of Whitaker & Co., which was the partnership existing between him and the defendant, continued, that the plaintiff deposited money in his own name in the bank of Rison & Co., at Huntsville, Ala.; that the money was deposited by him which was his individual money and was not the money of Whitaker & Co.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave to the jury the following written charges: (1.) "The court charges the jury that if the money deposited by the plaintiff with Rison and Company was the individual money of the plaintiff and was not taken from the partnership business of S. C. Whitaker and Company, then defendant was not interested therein and acquired no right therein or on account thereof against the plaintiff." (2.) "If the jury are not satisfied to a reasonable certainty that the plaintiff made false and fraudulent representations to the defendant about the amount of the goods, accounts and money in the bank—then you will find for plaintiff." (3.) "The defendant must show to your reasonable satisfaction that the statements, if they were made by the plaintiff at the time of the trade, were false and that the statements were made as facts and not as opinion and belief." (4.) "The court charges the jury that whether they believe what Mr. Hooper says about the amount of the indebtedness is a question for the jury, and if from all the facts and circumstances in the case they are not reasonably satisfied what he says about the amount is correct—they may find that he has not shown to a reasonable certainty what the indebtedness of the firm was." (5.) "The court charges the jury that whether the representations set up by defendant were made—whether they were intended by Whitaker as the affirmation of a fact or the expression only of his opinion or belief—are questions solely for the jury to find from the evidence, and if they find that he made the representations complained of by the defendant, but that it was as an opinion or belief this would not authorize you to find for defendant—but on this matter you would find for plaintiff."

The defendant separately excepted to the giving of each of these charges, and also separately excepted to the courts refusal to give each of the following charges requested by him: (A.) "The court charges the jury that a statement that there was belonging to the firm a stock of goods amounting to $1,800, was, if made, the statement of a fact and not the statement of an opinion." (B.) "The court charges the jury that a

statement that there were accounts belonging to the firm amounting to $450, was, if made, the statement of an opinion." (C.) "The court charges the jury that a statement that there was enough money in the bank to pay the debts of the firm, was, if made, the representation of a fact and not the statement of an opinion." (D.) "The court charges the jury that if Whitaker made a false statement to Hooper at the time of the trade as to the amount of goods owned by the firm, or of the amount of debts due to the firm, or the amount of cash owned by the firm, then it would make no difference even if Whitaker believed the statement, whether Whitaker was ignorant or had knowledge of the truth is wholly immaterial." (E.) "The court charges the jury that if Whitaker told Hooper the firm of S. C. Whitaker and Company owned an $1,800 stock of goods, and if there was only $729 of goods in the stock, and if Hooper was ignorant of the truth of this matter, and in ignorance thereof, if Hooper acted on the belief that the statement was true and made the purchase, then the defendant would be entitled to have the due bill credited with one-half the difference between $1,800 and $729." (F.) "The court charges the jury that if one witness testifies that certain things were said in a conversation, and if another witness testifies that he does not remember what was said in the conversation, but denies that the things stated by the first witness were said, and if the witnesses are equally interested, equally credible and had equal means of knowing the truth, then greater weight is to be given to the testimony of the witness who testifies affirmatively than to that of the one who testifies negatively." (G.) "The court charges the jury that if Whitaker told Hooper that there was belonging to the firm a stock of goods amounting to $1,800, and if there was in fact only $729 of goods, and if he represented to Hooper that there were accounts due the firm amounting to $450, and if there was in fact only $250 of said accounts, and if he represented to Hooper that there was enough money belonging to the firm to pay the debts of the firm, and if the cash in fact lacked $471 of being sufficient to pay the debts of

[Hooper v. Whitaker.]

the firm, and if Hooper was ignorant of the truth of these facts and relied on Whitaker's statements as to them, and if under these circumstances the defendant executed the instrument sued on, then defendant would be entitled to reduce the amount of the due bill to the extent of $871."

There were verdict and judgment for the plaintiff, fixing the recovery at $936.41.

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

O. D. STREET, for appellant.—When the note was offered in evidence defendant objected to it on the ground that it was not stamped as required by law. The evidence in this connection showed that when delivered to plaintiff it bore only one two cent revenue stamp, and that afterwards, without defendant's knowledge or consent, the requisite number were affixed by plaintiff and his attorney.—War Rev. Act (June 13, 1898), s. 7; *Latham v. Smith*, 45 Ill. 25; *M. & G. R. R. Co. v. Edwards*, 46 Ala. 267; *Muscatine v. Stoneman*, 30 Iowa 526; *Chartiers & Co. v. McMara*, 72 Pa. 278; *Woodson v. Randolph*, 1 Va. Cas. 128; *Wigham v. Pickett*, 4 Ala. 140.

Where the vendor of personal property makes false representation as to material facts, relating thereto and the purchaser relies upon these facts, such misrepresentation is a fraud and it is immaterial that the purchaser had the means of ascertaining the falsity of the fact so misrepresented.—*Burroughs v. Guano Co.*, 81 Ala. 255; *Guano Co. v. Anglin*, 82 Ala. 492; *Brown v. Freeman*, 79 Ala. 406; 28 Am. & Eng. Ency. Law (1st ed.) 470; *Tabor v. Peters*, 74 Ala. 90.

D. ISBELL and JOHN A. LUSK, *contra.*—The court committed no error in allowing the note to be introduced in evidence. It was admissible although the revenue stamps were not placed upon it at the time of its execution.—*Bibb & Faulkner v. Bonds*, 57 Ala. 509; *Knox v. Rossi*, 48 L. R. A. 305; *Carpenter v. Snellgrove*, 97 Mass. 452; *Green v. Holmay*, 101 Mass. 243; 3 Am. Rep. 339; *Griffin v. Rowney*, 35 Conn. 239; *Craig v. Dim-*

*mick,* 47 Ala. 308; *Bunker v. Green,* 48 Ill. 243; *U. S. Express Co. v. Haimes,* 48 Ill. 243.

As to whether certain statements are to be taken as the affirmation of facts or the mere expression of opinion is a question for the determination of the jury, under all the circumstances of the case.—*Foster v. Kennedy,* 38 Ala. 359; *Moses v. Katzenbergen,* 84 Ala. 95; *Moses v. Freeman,* 79 Ala. 406; 14 Am. & Eng. Ency Law 206; *Sledge v. Scott,* 56 Ala. 202; *Bradford v. Bush,* 10 Ala. 386; *Rich v. Dill et al.,* 8th par. 134, 81 Am. Dec. 56.

TYSON, J.—Under the "act, to provide ways and means to meet war expenditures and for other purposes," approved June 13, 1898, an unstamped note is not competent evidence in any court. By the provisions of this act the maker of the note is required to affix the necessary revenue stamps before issuing it. But when he fails at a time when or a place where no collection district was established, it is lawful for any party having an interest in the note to affix the proper stamp thereto. 30 U. S. Stat. at Large, §§ 7, 13, p. 452.

The note sued on had the requisite value of stamps affixed, but eighteen cents of the twenty cents, were affixed by the payee without the knowledge or consent of the maker, after the note was issued and delivered to him.

Many of the courts hold that the provision of the act excluding instruments from evidence is inapplicable to State courts. See note to *Knox v. Rossi,* 48 L. R. A. 305, where all the authorities are collated and commented on. A decision of that question, however, is not necessary here. In the absence of proof of an intent to defraud the government by failing to affix the requisite value of stamps, the note was properly admitted in evidence.—*Bibb v. Bonds,* 57 Ala. 509; *Perryman v. Greenville,* 51 Ala. 507; *Whigham v. Pickett,* 43 Ala. 140.

Plaintiff and defendant were partners in the retail liquor business, and the consideration of the note sued on was for the plaintiff's interest in the business. The

main defenses interposed were false representations made to defendant which induced him to make the purchase and to execute the note to his damage, which he seeks to recoup. These defenses are set up in three pleas, designated as pleas No. 7, A. and B.

The false representation alleged in plea 7 is that plaintiff represented that there was enough cash in the Bank of Guntersville belonging to the firm to pay its debts.

In A. the allegation is that plaintiff represented that there were goods belonging to the firm, at invoice prices, amounting to eighteen hundred dollars.

In B, it is alleged that plaintiff warranted that the firm owned and had in stock, goods amounting at the invoice price to eighteen hundred dollars, and that he (defendant) was ignorant that the warranty was false.

Before stating the tendencies of the evidence and the principles of law governing the case, it will be well to note that each of the foregoing pleas is predicated upon an affirmation of a fact by plaintiff which is alleged to be false, in contradistinction to an opinion. Issue was taken upon them, and the numerous charges to which exceptions were reserved, must be tested by the issues presented by these pleas in connection with the evidence. The rule of law governing such cases is, that it is not material whether the vendor knew or had means of knowing the statement of fact to be untrue or that he made it in ignorance of the fact, if the purchaser relying upon it was induced by the representation to make the transaction. And when sued for the purchase price, he may retain the property, and avail himself of the damages he has suffered by making proof of its real value and abate the recovery *pro tanto*. Obviously the representations must be of a material fact, upon which the defendant had the right to rely and did rely. If he knew of their falsity, no fraud was practiced upon him. He cannot be said to have been deceived or injured by them; for deception must have been practiced and injury must have resulted to him on account of his reliance upon them in ignorance of their falsity. And the burden of proof was upon him to establish not only the representations as laid in his pleas, but their falsity to his in-

jury. While it is doubtless true that a mere opportunity to know the truth or falsity of the statements made to him, will not relieve the party making the representations, if materially false and relied upon, from the consequences of his deception, it is, nevertheless, true that the party complaining of the fraud, cannot refuse to consult his own knowledge of the condition of the subject-matter of the sale and purchase. If by reason of his familiarity with the condition of the business he was purchasing he knew the statements were false or had reason to believe they were untrue, and no deception was practiced so as to mislead him from consulting his own knowledge of its condition, he was not deceived. *Tabor v. Peters*, 74 Ala. 90; *Brown v. Freeman,* 79 Ala. 406; *Moses v. Katzenberger*, 84 Ala. 95; *Pacific Guano Co. v. Anglin,* 82 Ala. 492; *Sledge v. Scott,* 56 Ala. 202; *Atwood v. Wright*, 29 Ala. 346.

For the purpose of applying these principles to the charges, and the exceptions reserved to the introduction of evidence, we will state in short some of the testimony as shown by the record. Plaintiff and defendant were partners in the retail liquor business, and the partnership had been in existence for some eight or nine months. While the plaintiff was, under the partnership agreement, to manage the business, the evidence undisputedly shows that defendant assisted in the conduct and management of it, had access to and made entries upon the books of the firm, sold liquors to customers and purchased goods for the concern. He was, under the agreement, to sign all checks drawn upon their bank, which was named in the agreement. He had access to the cash drawer where the bank pass book was kept. Only a short time prior to the giving of the note sued on, he was fully informed as to the condition of the partnership affairs—this information having been acquired through an accountant, assisted by him, employed for that purpose. He was familiar with the liquor business, having been engaged in it for the twelve or fifteen years. The transaction which resulted in the purchase of his partner's interest in the business for which the note sued on was given, was initiated and consum-

mated in their place of business. The stock of goods and the books of the firm were there. While it is not shown that he made an examination of either, he had the opportunity to do so. The fact that the books were there, was a circumstances to go to the jury upon the question of the probability of whether or not plaintiff made the misrepresentations relied upon in the pleas. However, if the statements as averred in defendant's pleas were made to him which he testified were made, and he was ignorant of their falsity, he had a right to rely upon them, and were under no duty to examine the books for the purpose of ascertaining the truth or falsity of these statements. The plaintiff denied making the representations, but testified that "he and defendant together estimated that their stock on hand would amount to about $1,800;   *   *   *   that he never told defendant there was enough money in bank to pay the debts of the firm;   *   *   *   that he did tell Hooper that the amount of money in bank was $300 to $500." It is scarcely necessary to say that if the testimony of the plaintiff was true, the defendant has not proven the averments of his pleas. But independent of this, the evidence showed that the amount of money in bank was more than $300 and less than $500, so then this representation was not false if the testimony of plaintiff is true, and if the estimated value of the stock of goods was arrived at in the manner as stated, there was no fraud or false warranty. We have only to make an application of the foregoing principles and facts to the charges in order to determine their correctness or incorrectness.

Charges 1 and 4 given at the request of plaintiff were proper.

Charges 2 and 3 were calculated to mislead the jury to the conclusion that plaintiff was entitled to recover, notwithstanding the jury may have believed his statement was false and not known by defendant to be false, as to the value of the stock of goods, if he made it. In other words, they were, in effect, a direction to the jury that they must be reasonably satisfied that all the statements, if made, of plaintiff's were false and fraudulent, whereas one may have been and the others not.

Charge 5 was bad for predicating a determination of the character or nature of the representations alone upon the intention of the plaintiff, without regard to their form or how defendant may have understood them.

Charges A, C and E requested by defendant should have been given.

Charges B, D and G were properly refused. They each make reference to a representation as to the amount of the accounts belonging to the firm. This statement was not invoked as a defense in any of the pleas.

Charge F was so manifestly improper, it is unnecessary to comment upon it.

Reversed and remanded.